Joan Crawford v. Commissioner.
Crawford v. Commissioner
Docket No. 71973.
United States Tax Court
T.C. Memo 1961-148; 1961 Tax Ct. Memo LEXIS 202; 20 T.C.M. (CCH) 740; T.C.M. (RIA) 61148; May 24, 1961
J. Everett Blum, Esq., 139 S. Beverly Dr., Beverly Hills, Calif., for the petitioner. Karl M. Samuelian, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent has determined a deficiency in income tax against the petitioner for the taxable year 1953 in the amount of $30,561.60. The only question to be decided is whether petitioner sustained a deductible loss in 1953 of her investment in an unpublished story. Findings of Fact Some of the facts have been stipulated and are found as stipulated. Petitioner is a resident of Los Angeles, California. She filed her income tax return for 1953 with the district director of internal revenue *203 at Los Angeles. The return was prepared and filed on the cash receipts and disbursements basis. During the years between 1946 to 1949, petitioner, a well-known motion picture actress, was under contract with Warner Bros. Pictures, Inc., a producer of motion pictures with its west coast studios at Burbank, California. During the latter part of 1946 or early in 1947, while making a trip by train from New York to California, petitioner received an envelope containing a manuscript of an unpublished story from somebody from Look Magazine, with the request that she read it and if she became interested, to bring it to the attention of Warner Bros. The story was entitled "Teacher" or "Teacher (Miss O'Brien)," hereafter referred to as the Teacher Story. It was written by Charles Speer for Look Magazine. Petitioner was not acquainted with Speer. Petitioner became very much interested in the story. She thought it had a good part that she could play. She took the story to Jerry Wald at Warner Bros., who also became interested in it. On December 5, 1947, Warner Bros. acquired from Speer, through his agent, the M. C. Levee Agency, at a cost of $1,000, an option to purchase all rights in the *204 story except "commercial radio rights," which were reserved by Speer. On March 3, 1948, the studio notified Speer of its election to exercise its option and paid an addition $6,500, or a total consideration of $7,500, and on March 11, 1953, formally acquired the optioned rights in the story. Subsequently, the studio had two screen scripts written and otherwise made expenditures in preparing to produce a motion picture based on the story, in which petitioner was to be the star. Including the $7,500 paid to Speer, the studio expended a total of $35,954.82 in connection with the story. The studio then decided not to produce the picture. It had decided that the role was not suitable for petitioner. It was a character role, whereas she had become a star by playing more glamorous parts. Despite the action of the studio, petitioner liked the story, thought she could star in it, and wanted it so badly that on June 22, 1948, she purchased the rights of the studio in the story, paying $35,954.82, the amount it had cost the studio. Her purpose in buying the story was that of starring in a motion picture made from it and not that of making a profit from its resale. After acquiring the story, *205 she hired a writer to prepare a script for producing a motion picture. Petitioner's agent was MCA Artists, Ltd., MCA standing for Music Corporation of America. Petitioner left Warner Bros. in 1949. She requested MCA to offer the story to producers of motion pictures with the understanding that she would be the star in the picture to be produced. She understood that that was done and, also, that the producers interviewed rejected the proposal for the indicated reason that the role was "not for" her and that the picture would not be "good box office." Petitioner's income tax returns for 1951, 1952 and 1953 were prepared for her by a certified public accountant, a representative of Business Administration Co., which firm was also petitioner's business manager. At the end of 1951, petitioner's agent MCA, her tax attorney, and her accountant-business manager discussed her investment in the Teacher Story and advised her that as of that date the value of the story was $25,000, and that she was entitled to a deduction of $10,000. On her return for 1951, she claimed a deduction in that amount. At the end of 1952, they advised her that the value of the story was $10,000 as of that date, *206 and that she was entitled to a deduction of $15,000 on her 1952 return. On her 1952 return, she claimed a deduction in that amount. Respondent disallowed the two deductions claimed, petitioner agreeing to the disallowance of the 1951 deduction on June 17, 1953, and to the disallowance of the 1952 deduction in November 1955. MCA had various departments, including one for motion pictures and one for television. In 1951 Ned Brown was employed as a literary agent in the motion picture department. His duties consisted of representing authors and selling their material for motion picture production. In 1953, after the 1951 deduction claimed by petitioner had been disallowed by respondent, it was decided that MCA should resubmit the Teacher Story to the various motion picture studios for the purpose of selling it, free of any requirement that petitioner have a role in the picture when produced. MCA was directed, also, to request the producers to express their reactions to the proposal in writing. On an undetermined date, petitioner received a letter dated December 31, 1953, from Ned Brown, on behalf of MCA, in which the following statements were made: We have again offered for resale, *207 at your request, the motion picture and allied rights to your story "TEACHER" ("MISS O'BRIEN") by Charles Speer. We regret to advise you that we have been unsuccessful in our latest efforts to revive any interest with any film company in purchasing the motion picture rights. For your information, we have submitted the material to Twentieth Century-Fox Film Corporation, Paramount Pictures Corporation, Columbia Pictures Corporation, Universal Pictures Company, Inc., Loew's Incorporated and Republic Pictures Company, Inc. We are attaching for your files letters of rejection from Paramount, Twentieth Century-Fox, Loew's Incorporated, Republic and Columbia. Also Universal. As you know, the story was submitted several years ago and at that time we were also unsuccessful in interesting any producer in purchasing the rights. These submissions were to the following: Pat Duggan (Goldwyn Production) Irving Briskin (Columbia) Bernard Luber (Independent Producer) James Nasser (Independent Producer) Sid Rogell (RKO) Walter MacEwen (RKO) Curtis Bernhardt Ben Bogeaus Collier Young Irwin Allen Jerry Wald Walter Wanger In view of our lack of success in marketing this *208 property to date, it is our opinion that the chances of selling the rights are nil and that the property must consequently be considered worthless. We are, therefore, returning for your files the copies of the manuscript. In the producers' letters, various reasons were given for not taking the story. One letter was undated, four bore December 1953 dates, and one bore the date of January 6, 1954. Twentieth Century-Fox Film Corporation thought the story was not what the studio needed at that time; Paramount Pictures Corporation felt that the story did not fit into its "present requirements"; Columbia Picture Corporation was of the opinion that the story was a personal one, trite and ordinary, and had little to do with the problems that confronted a school teacher; Universal-International Pictures thought the story had only the barest essentials for a motion picture, but that it was the basis for a "soap opera" heard on radio daily; Metro-Goldwyn-Mayer had seen the story in 1947, and then, as in 1953, thought the dramatization did not quite measure up, and further the studio had recently produced one teacher story and owned another, which for the time being it thought were enough; *209 and Republic felt that it was a routine personal story "which never achieves any great importance." On December 19, 1956, David Brown, for Twentieth Century-Fox Film Corporation, wrote to an internal revenue agent, at the latter's request, a letter [1] which contained the following statements: As I told you on Monday, December 17th, the story TEACHER by Charles Speer, which was submitted to us in December 1953, was not regarded as of sufficient importance at that time for purchase here because of the necessity to concentrate on subjects of larger scope. This policy was the result of the introduction at that time of Cinema Scope requiring an extensive canvass for our stories. However, I cannot tell you that the story is worthless because it may well be suitable for television production, in my opinion, or in the event of it being packaged with a box-office personality it also might be deemed of value as a motion picture property today. Except for commercial radio rights, petitioner was the owner of all rights to the Teacher Story, which rights would also cover television, magazine and *210 book publication, and stage. Petitioner's agent tried to sell the story only to motion pictures producers. During the taxable year petitioner did not sell, exchange, or otherwise dispose of her rights in the story. She still possesses the manuscript, believes the story to be good, and would like to star in a motion picture based upon it. In her 1953 return, under Miscellaneous Deductions aggregating $124,095.52, one of the deductions petitioner claimed was described as follows: Writeoff of cost on "Teacher Story"
- property considered worthless
and unsuitable for production
$35,954.82
In disallowing the deduction, respondent determined that petitioner did not sustain a deductible loss under the provisions of section 23(e) or any other provision of the Internal Revenue Code of 1939 "from loss of value or worthlessness of your rights in the literary property designated in your return as 'Teacher Story.'" Opinion The sole issue is whether petitioner sustained a deductible loss of her investment in the Teacher Story in the taxable year 1953. Section 23(e)(1) and (2) of the Internal Revenue Code of 1932[2] permits an individual to take a *211 deduction for a loss sustained during the taxable year and not compensated for by insurance or otherwise, if it was incurred in a trade or business, or if incurred in a transaction entered into for profit though not connected with the trade or business. The parties are in agreement as to the general principles of law relative to the deductibility of losses, but are in disagreement as to the facts on which a loss, if any, was incurred and the year in which the loss, if any, was sustained. Section 39.23(e)-1 of Regulations 118, applicable to losses by individuals, provides, in part, as follows: (b) In general losses for which an amount may be deducted from gross income must be evidenced by closed and completed transactions, fixed by identifiable events, *212 bona fide and actually sustained during the taxable period for which allowed. Substance and not mere form will govern in determining deductible losses. * * * A similar provision had been included in prior regulations, [3] and such provision has been held to have become accepted "law" with reference to the deduction of losses generally. J. G. Boswell Co., 34 T.C. 539, 544. Petitioner has stipulated that she did not sell, exchange, or otherwise dispose of her rights in the Teacher Story during the taxable year 1953. Her claim is that her rights in the story became worthless in 1953, and for that reason she sustained in that year a deductible loss of her investment therein. The question is a factual one, and the burden of proof rests upon petitioner. In support of her claim, it is argued that she acquired her literary property in 1948, at a cost of $35,954.82, with the idea of getting a producer to produce a motion picture based on the story, with her playing the leading role; that her agent made such proposal to various studios *213 and producers; that the proposal was rejected, on the ground that the story did not provide a role that was suitable for her; that the story itself was not then rejected; that in 1953 her agent attempted to sell the story to motion picture producers without the condition that she be starred in the production; that the producers to whom the story was presented thought that the material was unsuitable for a motion picture production, and the efforts to sell the story were unsuccessful; that letters from the producers evidenced that fact; and that the proposals and rejections established the worthlessness of her rights in the story during the taxable year 1953. Actually, if the proof offered be regarded as showing that the story was worthless in 1953, the same proof could in reason indicate worthlessness in some year prior to 1953, in which case 1953 could not be the year of deduction, since under the statute and the regulations a loss is deductible for the year in which it is sustained. In that connection, the argument is made for petitioner that respondent's disallowance of the deductions claimed for 1951 and 1952 for partial worthlessness is to be regarded as proof that petitioner's *214 story rights did have some value into 1953, in which year those rights are shown by the proof offered to have become worthless. The point is not well taken. While the reason for respondent's disallowance of the 1951 and 1952 deductions for partial worthlessness is not shown, it could have been that he found no deduction provision in the statute allowing a deduction for partial worthlessness or loss in value of an asset other than in the case of debts. On the other hand, it could have been that in those years, as here, there was no showing of a completed transaction or that the property was worthless. The petitioner still owns all rights to the story except radio rights. She has not discarded or destroyed it. She still thinks it is a good story, and would still like to play the lead in a motion picture made from it. It is true that in 1953 it was offered to several motion picture producing companies with no reservations, and there were no takers. It was not offered for exploitation to any other medium, and furthermore, few, if any, of the picture producers to whom it was offered went so far as to say it was worthless, and one, some two or three years later, specifically declared he *215 would not say it was worthless. Certainly the petitioner has not shown that she sustained a loss in 1953 due to the worthlessness of the story "Teacher (Miss O'Brien)," and we so hold. Decision will be entered for the respondent. Footnotes
1. When offered in evidence, the response of counsel for petitioner was "No objection."↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - (1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *↩
3. Regs. 111, sec. 29.23(e)-1; Regs. 103, sec. 19.23(e)-1; Regs. 101, art. 23(e)-1; Regs. 94, art. 23(e)-1; Regs. 86, art. 23(e)-1.↩